# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

FILED
MAY 19 2006
U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>JOE PAUL GEORGE and<br>NANCY KOMASSA GEORGE,<br><br>                Debtors.<br><br>CINDY L. GEORGE,<br><br>                Plaintiff,<br>v.<br><br>JOE PAUL GEORGE,<br><br>                Defendant. | Chapter 7<br><br>Case No 0-05-01144-JMM<br><br><br><br>Adv. No. 05-00052<br><br>**MEMORANDUM DECISION**<br>(Opinion to Post) |

## I. INTRODUCTION

Pending before the court is Plaintiff's Complaint under 11 U.S.C. § 523(a)(15)[1] to have Joe Paul George's ("George") indemnification obligation under a marital settlement agreement declared non-dischargeable. George failed to prove that he is unable to pay that obligation and support himself and his dependents or that the detriment to him of

---

[1] Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, as the case from which this decision arises was filed before its effective date (generally 17 October 2005).

honoring the obligation, outweighs the detriment to Plaintiff if the obligation is discharged. Accordingly, Judgment will be entered for Plaintiff.

## II. <u>FACTUAL AND PROCEDURAL HISTORY</u>

George, who filed a joint Chapter 7 petition with Nancy George ("Current Wife") in August 2005, previously entered into a marital settlement agreement on December 13, 2004 ("Marital Settlement Agreement") with Cindy George ("Plaintiff"), resulting in his divorce from Plaintiff. Prior to the divorce, in April 2004, George moved to Oregon with the Current Wife to visit his mother and start a new life. George testified that he had problems obtaining regular employment in Oregon that would provide him with steady income to pay his expenses. The Debtors moved to three different places in Oregon looking for permanent employment. George testified that he experienced challenges in finding a job due to his poor health, including severe diabetes coupled with many adverse side effects, such as poor memory.

In December 2004, George returned to Wisconsin to appear at a hearing finalizing his divorce from Plaintiff. At that time, George and Plaintiff entered into the Marital Settlement Agreement. Section V, titled Debts and Financial Obligations, states that:

> [E]ach party shall be solely responsible for payment of any and all debts and liabilities incurred in his or her name after the date of filing this action, namely, May 5, 2004. Each party shall be responsible for the following debts and liabilities and shall hold the other harmless on the payment thereof...

2

(Tr. Exhibit D-1, pg. 4). The obligations ("Marital Debt") assigned to George were as follows:

| | |
|---|---|
| – American Express | $ 2,967 |
| – Chase | $ 7,444 |
| – Kunda loan (Plaintiff's parents) | $ 2,300 |
| – GM Card | $ 4,728 |
| – Atty fees (for Phillips-unrelated case) | $ 3,350 |
| – St. Joe's Hospital | $    136 |
| | $20,925 |

In December 2004, George found an opportunity for a husband and wife team to work as co-managers at Desert Rose, an assisted-living facility in Yuma, Arizona. The Debtors moved to Yuma to start work in February 2005.

On August 15, 2005, the Debtors filed a petition for Chapter 7 relief. On August 22, 2005, Plaintiff filed this adversary proceeding pro se. At the trial held on March 10, 2006, the only witnesses were the Debtors and Plaintiff.

## A.  DEBTORS' INCOME AND EXPENSES

The Debtors' net monthly take-home pay is $2,904 per month as listed on Schedule I.

The Debtors testified at trial about their monthly expenses. That testimony is summarized below:

### 1.  Medical expenses

The Debtors listed George's monthly medical expenses as $1,051 on his pre-trial statement and $1,000 on Schedule J. On cross-examination, George admitted that the

3

medical expense figure was overstated by approximately $350, because once the insurance deductible was met in the first month or two of the year, George's insurance paid 80 to 100 percent of most of his medical expenses. Therefore, the monthly amount for out-of-pocket medical expenses due to prescriptions and other items for George's diabetic condition is $697.

2. <u>Telephone expenses</u>

The amount of $150 for telephone expenses was comprised of calling cards purchased to call family and friends in Wisconsin each month. George attributed this expense primarily for calls to the Current Wife's mother, who lives in Wisconsin.

3. <u>Food</u>

George testified that the Debtors spent $300 a month on food and $100 on dining out. Plaintiff questioned these amounts since the Debtors' meals are paid for by their employer. George responded that the Debtors had to go out to eat at least once per month to get away from the pressures placed on them by the residents of the retirement community where they lived and worked.

4. <u>Storage fees</u>

The Debtors pay $38 per month to store personal and household goods which they had brought with them when they moved to Yuma, but do not fit into their employer-provided 584-foot apartment.

4

5. <u>Support of Current Wife's mother</u>

The Debtors send $250 a month to help support the Current Wife's elderly mother, who lives in Wisconsin on limited income. The Debtors believe that the Current Wife's mother would undergo undue hardship without these funds. However, the Debtors do not claim the Current Wife's mother as their dependent for income tax purposes.

6. <u>Clothing and laundry expenses</u>

The Debtors listed their monthly clothing expenses at $100 and an additional $100 for laundry. The Debtors claimed that the clothing expenses are reasonable given that they are required to maintain a professional appearance at their place of employment. On cross-examination, the Debtors were questioned in detail on how they came up with the $100 figure for laundry and were unable to justify that number.

7. <u>Charitable contributions</u>

The Debtors clarified at the hearing that the $200 listed on Schedule J for charitable contributions each month, was a typographical error and should have been listed as $20.

8. <u>Recreation, clubs and entertainment</u>

The Debtors listed $100 for recreation. George testified that the Debtors go away on occasional trips to Phoenix or San Diego in order to escape the stress of their jobs at the assisted-living facility.

5

Case 0:05-ap-00052-JMM    Doc 35    Filed 05/19/06    Entered 05/19/06 16:10:53    Desc
Main Document    Page 5 of 13

9. Transportation

The Debtors listed $400 for transportation, not including car payments, on their Schedule J. On cross-examination, George testified that the Debtors spent $50 a week, or $400 a month, on gas because they had to get away from the retirement facility where they lived and worked, taking weekend drives or trips.

B. **PLAINTIFF'S INCOME AND EXPENSES**

Plaintiff is employed as an office manager, and her monthly take home pay is $2,830 per month. Plaintiff detailed her monthly expenses in Plaintiff's Exhibit E. Expenses listed include a $1,200 mortgage payment and approximately $430 for property taxes, utilities, and other associated costs for upkeep of the house she formerly shared with George. Plaintiff testified she owns a 1999 Dodge ,which she uses to get to work. She testified that the car is in dire need of maintenance. She listed a monthly expense of $150 for car maintenance and fuel.

Plaintiff also pays approximately $730 a month on the various debts assigned to her in the Marital Settlement Agreement. On cross-examination, Plaintiff acknowledged that she has not paid any of the Marital Debt. However, Plaintiff testified that her parents have threatened to sue her for the entire amount due them, and attorney Phillips has threatened to send his matter to collection.

## III. ISSUE

Is the Marital Debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(15)?

## IV. JURISDICTION

This court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157(a) and (b)(2)(I).

## V. DISCUSSION

Debts incurred in the course of a divorce proceeding are not discharged unless George establishes: (a) that there is an inability to pay the debt from income or property not reasonably necessary for his maintenance and support or his dependent's maintenance and support; or (b) the benefit of a discharge to George outweighs the detriment a discharge will have on Plaintiff. § 523(a)(15). George bears the burden of proof of establishing that the Marital Debt should be discharged under either prong of § 523(a)(15). In re Jodoin, 209 B.R. 132, 141 (9th Cir. BAP 1997). In meeting this burden, the appropriate time at which to apply the ability to pay and detriment tests is at the time of trial. Id. at 142.

A. Ability to Pay

The Jodoin court examined how to determine whether a debtor has disposable income, and thus an ability to pay under § 523(a)(15). Id. The court found that the

7

disposable income test outlined in § 1325(b) provides "an excellent starting point for measuring a debtor's ability to pay under § 523 (a)(15)(B)." Id. Further, the Jodoin court held that in order to properly apply the disposable income test, the court should consider the debtor's future income earning ability and the debtor's reasonable expenses. Id. As noted by the court in In re Dressler, 194 B.R. 290, 304 (Bank. D. R.I. 1996):

> [s]ection 523(a)15(A)'s language 'essentially mirrors' that of § 1325(b)(2), and the disposable income test enables the court to determine what funds are available to the debtor to pay the obligation after deducting 'reasonably necessary expenses'.

In the present case, George was not able to show an inability to pay the Marital Debt. Although George argued that, overall his expenses are reasonable and generally fall within the Chapter 13 Trustee Guidelines for Monthly Expenses ("Chapter 13 Guidelines"),[2] upon closer examination, the evidence shows the opposite - some expenses are not reasonable. For instance, the Debtors' telephone expense of $150 per month is not reasonable, given George's testimony that his employer provides local telephone service free of charge. The Debtors' telephone expense of $150 per month was specifically for long-distance charges to call family and friends out of state. Such an expense is not reasonably necessary for the Debtors' support. The Debtors' food expense

---

[2] Chapter 13 Trustee Guidelines form Monthly Expenses (November 2003), http://www.dianedrain.com/Bankruptcy/BankruptcyForms/TE%20Guidelines%2011-03.pdf (last visited May 19, 2006).

of $400 is also not reasonable since their employer provides their meals. While the stress and burdens of the Debtors' employment may be the explanation for eating out each week and taking frequent overnight trips out of town, a "stress reduction" expense should not be a factor in determining the ability to pay under § 523(a)(15)(A).

George's assertion that his health problems are mounting and, therefore, the costs of what he has to pay for medicine and supplies will make it impossible for him to pay the Marital Debt, was not persuasive. George testified that his employer provides health insurance. Plaintiff established that George had overstated his average monthly medical expenses both on Schedule J and the Pretrial Statement. On cross-examination, he agreed the correct number was approximately $697 a month, not $1,000. Vague assertions that his medical costs may increase in the future, are insufficient to carry George's burden of proof that he does not have the ability to pay the Marital Debt.

When analyzing a debtor's ability to pay, the court may also take into account a debtor's past payment history of marital debt and support obligations as well as a debtor's future income stream. In re Myrvang, 232 F.2d 1116, 1120 (9th Cir. 2000). A debtor's income should be measured by his realistic earning potential, not by lifestyle or other choices which restrict a debtor's income. In re Slygh, 244 B.R. 410, 416 (Bank. N.D. Ohio 2002).

The Debtors have made choices with their monthly expenses which seem to restrict their income, similar to the choices made by the debtor in Slygh. In the Slygh case, the

9

Case 0:05-ap-00052-JMM    Doc 35    Filed 05/19/06    Entered 05/19/06 16:10:53    Desc
Main Document    Page 9 of 13

debtor's job was secure, there was no reason to conclude he would earn less in the future, and he had chosen to lease a new vehicle resulting in an additional $150 month expense. The Slygh court found the debtor had an ability to pay his marital debt. Id. at 416. Likewise in this case, the Debtors have made a choice to support the Current Wife's mother, by regularly sending her $250 a month which otherwise could be available disposable income. George testified at trial that his mother-in-law was not a legal dependent. Therefore, any expense to support her cannot be considered a reasonable expense to support a debtor or his dependents under § 523(a)(15)(A). The evidence indicates George does have the ability to pay the Marital Debt and pay the expenses reasonably necessary to support himself and the Current Wife. Accordingly, he has not met his burden of proof under the first prong of § 523(a)(15).

B. Balancing of the Hardships

Even though George has the ability to pay the Marital Debt, that debt may still be discharged if the benefit to him outweighs the detriment to Plaintiff if the debt is discharged. § 523(a)(15)(B). The Jodoin court considered the balancing test under § 523(a)(15)(B), and stated that "the relevant inquiry into benefit and detriment...primarily focuses upon the total economic situation of the parties in their new lives." Jodoin, 209 B.R. at 143.

In this case, George did not meet his burden of demonstrating that his economic situation is significantly worse than Plaintiff's. Although Plaintiff's income, as a single

10

person, is within $100 of the Debtors' combined income, Plaintiff pays several expenses that the Debtors do not have to pay. Significantly, Plaintiff pays approximately $700 a month on the debts assigned to her under the Marital Settlement Agreement. Plaintiff's lifestyle is certainly not extravagant. Her monthly expenses include only $179 for food and $150 for auto expenses. Plaintiff testified she rarely buys new clothes, does not go out to eat nor does she go on overnight trips out of town. She further testified that she often is $500 short in meeting her monthly obligations.

George argues that Plaintiff's mortgage payment of $1,200 is unreasonable for a family of one and that Plaintiff is building up equity in the former marital home while he is living in a small apartment and, therefore, he should prevail under a balancing of the hardships analysis. This argument is flawed because as part of the Marital Settlement Agreement, Plaintiff was required to consolidate a first mortgage of $156,000 together with a home equity line of $25,000, at a higher interest rate, to remove George, as a joint tenant and obligor on the mortgage. Furthermore, equity in Plaintiff's house is not presently available to her to assist in meeting her monthly bills. Furthermore, George also failed to offer any evidence that Plaintiff could realize the equity value from her house or find a cheaper place to live. Since George has the burden of proof, his failure to proffer such evidence is fatal to his claim that he should prevail under the second prong of § 523(a)(15).

11

Case 0:05-ap-00052-JMM    Doc 35    Filed 05/19/06    Entered 05/19/06 16:10:53    Desc
Main Document    Page 11 of 13

C. Section § 523(a)(15) and the Hold Harmless Clause

It is well settled that a non-dischargeable hold harmless obligation means that "the obligor-spouse indemnifies the obligee-spouse <u>in the event that the obligee is required to pay</u>." See In re Beggs, 314 B.R. 401, 416 (Bank. E.D. Ark. 2004) (emphasis added); See also In re Dollaga, 260 B.R. 493, 496 (9th Cir. BAP 2001) ("It is only the obligation owed to the spouse or former spouse - an obligation to hold the spouse or former spouse harmless - which is within the scope of this section [523(a)(15)].").

While George did not meet his burden to show either an inability to pay the Marital Debt or that the detriment to him of paying the Marital Debt was greater than it would be to Plaintiff if the debt is discharged, he is only required to pay debts Plaintiff has to pay. George argues that because Plaintiff has not paid any of the Marital Debt, there is no non-dischargeable obligation. However, that argument ignores the fact that as long as the Marital Debt is unpaid, Plaintiff is still at risk of being required to pay it, at least until the statute of limitations runs on the various obligations. The argument also ignores Plaintiff's evidence that two of the Marital Debt creditors have communicated to Plaintiff their intention to initiate collection activities. Under § 523(a)(15), the hold harmless clause of the Marital Settlement Agreement is non-dischargeable, to the extent that Plaintiff is required to pay any of the Marital Debt. Since the evidence indicated that there had been no demand on Plaintiff to pay any of the credit card debt or the hospital

12

debt, George is not obligated to indemnify her for those debts, unless and until, Plaintiff is subjected to a demand for payment.

## VI. CONCLUSION

George did not carry his burden of proof under either of the prongs of § 523(a)(15). To the extent that creditors of the Marital Debt pursue Plaintiff for payment, George must hold Plaintiff harmless from those obligations.

The foregoing constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. A judgment in favor of Plaintiff will be entered this date.

Dated this 19th day of May 2006.

EILEEN W. HOLLOWELL
UNITED STATES BANKRUPTCY JUDGE

Copy of the foregoing mailed
this 19th day of May, 2006, to:

John A. Weil, Esq.
Cristyn E. Weil, Esq.
Weil & Weil, P.L.L.C.
1600 South 4th Ave., Suite C
Yuma, AZ 85364
Attorneys for Defendant

Cindy George
3588 Townline Road
West Bend, WI 53095
Pro Se Plaintiff

By_____
Judicial Assistant

13